**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:     **GENNARO RAUSO**          :     **MISCELLANEOUS**
                                                            :
                                                            :     **No. 06-03006ELF**
                                                            :

# M E M O R A N D U M   O P I N I O N

BY:  **ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE**

## I.

The matter before me arises from a chapter 13 bankruptcy case captioned under the name of "Oral Grant," filed by Gennaro Rauso in his capacity as attorney-in-fact for Oral Grant. See In re Oral Grant,  Bky No. 06-11919.

On May 15, 2006, I entered a show cause order requiring Mr. Grant's attendance at a hearing on May 25, 2006 to determine whether his case should be dismissed for the failure to satisfy the credit counseling requirements of 11 U.S.C. §109(h).  The May 15th Order also required the presence of Mr. Rauso and the United States Trustee ("the UST") to ascertain "the applicability of 11 U.S.C. §110 to Mr. Rauso, Mr. Rauso's compliance with §110, and if appropriate, the issuance of an order pursuant to §110(h)(3), (I), (j) and (l)."

For the reasons set forth below, the May 15, 2006 show cause order will be discharged, but I will retain jurisdiction for a limited period of time to permit the UST, in her discretion, to file a motion seeking sanctions against Mr. Rauso.

1

## II.

The chapter 13 bankruptcy petition filed on May 9, 2006 by Mr. Rauso as the attorney-in-fact for Oral Grant was Mr. Grant's fourth bankruptcy filing within a three-year period. Mr. Grant first filed a Chapter 13 bankruptcy case on December 15, 2003, docketed at Bky. No. 03-38189. This first case was dismissed on June 8, 2004. On October 4, 2004, Mr. Grant's filed his second Chapter 13 bankruptcy case, docketed as Bky. No. 04-33333. This second case was dismissed six months later on April 5, 2005. On September 9, 2005, Mr. Grant filed his third bankruptcy case, docketed as Bky. No. 05-32146. It was dismissed nearly two months later on November 15, 2005. From the face of the documents filed, it does not appear that Mr. Rauso was involved in any of the three prior filings.

Pursuant to my order dated May 15, 2006 in Mr. Grant's fourth bankruptcy case, I scheduled a show cause hearing on May 25, 2006. Mr. Rauso and the UST appeared, but Mr. Grant did not. Evidence was presented relating to the following issues: (1) Mr. Grant's compliance with the credit counseling requirements of 11 U.S.C. §109(h) and (2) Mr. Rauso's compliance with any obligations he might have under 11 U.S.C. §110. Mr. Rauso was the only witness who testified at the hearing.[1]

---

[1] Mr. Rauso exhibited the classic indicia of a witness who lacks credibility. He was belligerent and uncooperative. He invoked his privilege under the Fifth Amendment of the United States Constitution at least sixty (60) times in response to the UST's questions about the bankruptcy filing and its preparation, various properties and his relationship with Mr. Grant. As a result, it would be within my prerogative to draw an adverse inference against Mr. Rauso on the basis of his refusal to answer such questions. See Baxter v. Palmigianao, 425 U.S. 308, 318 (1976) (permitting adverse inference to be drawn from witness' silence in a civil proceeding). Nor was his credibility enhanced by his admission that he was convicted and spent time in prison for making false statements, mail fraud and bank fraud. (N.T. at 35 and 62). See Fed. R. Evid. 609(a)(2) ("evidence that any witness has been convicted a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment"). Because, as explained below, I resolve

At the close of the May 25, 2006 hearing, I took the matter under advisement and requested that the UST and Mr. Rauso file memoranda addressing two questions: (1) whether 11 U.S.C. §110 is applicable to Mr. Rauso in this case and (2) whether I have the authority to use my inherent power under 11 U.S.C. §105(a) to otherwise sanction Mr. Rauso for his conduct in Mr. Grant's fourth  bankruptcy case.

On June 14, 2006, I dismissed Mr. Grant's fourth bankruptcy case for failure to file a Chapter 13 plan by the deadlines I set in an Order dated May 9, 2006.  I retained jurisdiction over the contested matter that I took under advisement on May 25, 2006.  For purposes of case administration, I directed the Clerk of Court to generate a miscellaneous docket number for this contested matter and to include certain documents and docket entries from Mr. Grant's bankruptcy docket.  The Clerk docketed the contested matter as Miscellaneous No. 06-03006.

### III.

Mr. Rauso is no stranger to this court.  He has filed four (4) bankruptcy cases under his own name between 2000 and 2004.  He first filed a case on June 12, 2000, which was dismissed within two months for failure to pay the filing fee on August 3, 2000 (Bky. No. 00-17440).  Mr. Rauso filed his second bankruptcy petition one-year later on August 24, 2001, which was dismissed on October 25, 2001, within two months of its filing, for the same reason (Bky. No. 01-32114).  Mr. Rauso filed his third case on May 3, 2004 (Bky. No. 04-16241).  That case was

---

the issues before me on grounds which make it unnecessary to make a specific finding as to Mr. Rauso's general credibility (or lack thereof), I make no such finding.

3

dismissed the following month for the failure to file documents.  Finally, on July 7, 2004, one

month after the third case was dismissed, Mr. Rauso filed his fourth bankruptcy case (Bky. No.

04-19406). In an order dated July 15, 2004, just one week after the filing, Judge Raslavich

dismissed Mr. Rauso's fourth bankruptcy case with prejudice and barred him from filing any

future bankruptcy petitions without permission of the court.  See id. at Docket Entry #12.

In addition to the multiple bankruptcy cases Mr. Rauso has filed on his on own behalf,

Mr. Rauso also has been connected with many other bankruptcy filings in this district. See e.g.,

In re Juan Villanueva, Bky. No. 04-32133, In re Jesse Darden, Bky. No. 04-32908, In re Leto

Wilson, Bky. No. 04-32066, and In re Norma Keith, Bky. No. 04-32064; see also Memorandum

and Order by Senior Judge Ronald L. Buckwalter dated September 19, 2005 in In re Gennaro

Rauso, Misc. No. 04-03008, Docket Entry # 77.  For example, Mr. Rauso's residence –  126

South 5th Street, Darby, Pennsylvania ("the Darby Property") – was the street address listed on

the Darden, Wilson and Keith bankruptcy petitions.  And, in the Villanueva bankruptcy case, Mr.

Rauso filed an objection to a motion brought by a creditor pursuant to §362(d) on the basis that

he had partial ownership in the subject property and the court lacked personal and subject matter

jurisdiction.  On January 5, 2005, Judge Raslavich entered a bar order in the Villanueva

bankruptcy case which, in addition to dismissing the case, provided that "any future bankruptcy

cases filed by Debtor, or . . . Gennaro Rauso . . . within One Hundred Eighty (180) days of the

date of this Court Order, without seeking leave of Court, will not stay any actions . . . ."  See In re

Juan Villanueva, Bky. No. 04-32133 at Docket Entry # 55.

The court had not heard from Mr. Rauso thereafter until he filed Mr. Grant's bankruptcy

petition on May 9, 2006.  Mr. Rauso used a "Limited Power of Attorney" ("the Power of

4

Attorney") that Mr. Grant executed on April 10, 2005 as his authority to initiate the filing

without Mr. Grant's knowledge.[2]

On Mr. Grant's bankruptcy petition, Mr. Rauso listed the Darby Property as Mr. Grant's

street address.  On Schedule A of Mr. Grant's bankruptcy schedules, Mr. Rauso listed two real

properties. The first was the Darby Property, a five-unit property with occupying tenants. (N.T. at

86).  Mr. Rauso owned the Darby Property before he sold it to Mr. Grant for one dollar

approximately eight months prior to filing Mr. Grant's bankruptcy petition.  (N.T. at 15-16).  I

consider it unlikely that Mr. Grant ever resided at the Darby Property or considered it his own

"street address" as stated by Mr. Rauso in the petition.  Rather, it is far more likely that Mr.

Grant's only connection to the property is his status as the nominal grantee of the deed executed

by Mr. Rauso eight months before this bankruptcy filing.[3]   Mr. Rauso is one of two tenants who

reside in the Darby Property. (N.T. at 86).   Mr. Rauso pays no rent to Mr. Grant, the nominal

owner of the Darby Property.  (N.T. at 87-88).

The second property listed in Schedule A in Mr. Grant's most recent case, 2029 Heather

Road, Folcroft, Pennsylvania, ("the Folcroft Property"), is a property formerly owned by a

_____

[2] I conclude that Mr. Grant was unaware of the bankruptcy filing based on Mr. Rauso's
testimony that Mr. Grant never saw the paperwork before it was filed, that Mr. Rauso was not
sure if Mr. Grant knew of the bankruptcy petition and that Mr. Rauso had not spoken with Mr.
Grant since before the filing. (N.T. at 20).  At the May 25, 2006 hearing, Mr. Rauso could not
even recall the last time he spoke with Mr. Grant. (N.T. at 18-19, 78-79).

[3] I take judicial notice of the fact that Mr. Grant listed 2724 S. 73rd Street, Philadelphia,
Pennsylvania, 19532 as his "street address" on his three prior bankruptcy petitions.   In light of
Mr. Rauso's testimony regarding his lack of contact with Mr. Grant, see n.1, supra, it is more
likely than not that the Darby Property "street address" that Mr. Rauso listed on Mr. Grant's
bankruptcy petition was false and that Mr. Rauso knew it to be false.

corporation called REO Investment Corporation ("REO").  (N.T. at 76).  REO is a corporation

solely owned by Mr. Rauso.  (N.T. at 21-22).  REO transferred a one-half interest in the Folcroft

Property to Mr. Grant for the same price as the Darby Property  – one dollar –  and at roughly the

same time. (N.T. at 77).  Thus, REO and Mr. Grant own the Folcroft Property as tenants in

common.  (N.T. at 76).

At the time Mr. Rauso filed Mr. Grant's bankruptcy petition, mortgage payments or real

estate taxes or both were in default.  Apparently, prior to the commencement of Mr. Grant's

fourth bankruptcy case, Mr. Rauso tried to negotiate payment arrangements for the secured

obligations for each property based on his authority under the terms of the Power of Attorney.[4]

Mr. Rauso filed the bankruptcy petition to prevent a sheriff's sale on one of the two properties.

(N.T. at 94).

On Schedule I, Mr. Rauso stated that Mr. Grant works as a truck driver, but did not report

any income for that occupation.[5]  Rather, he estimated that Mr. Grant receives only $2,300 from

---

[4] The Darby Property is subject to a tax lien worth approximately $34,000 held by
Delaware County and a $60,000 mortgage; the record does not reflect the amount of the arrearage
on the mortgage.  Mr. Rauso claims he uses the money he collects from rent to pay the county.
(N.T. 87-88).

The Folcroft property is encumbered by a mortgage held by Wachovia Bank and a tax
liability. (N.T. at 24).  Mr. Rauso claims to have negotiated with Wachovia Bank to accept
$25,000, payable in monthly instalments of $5,000.  (N.T. at 26-27).  As for the tax liability,
Rauso claims to have paid already $12,000 from his savings and will continue to pay $1,000 per
month. There is approximately $17,000 remaining in tax liability.  (N.T. at 65).  Mr. Grant is not
aware of either settlement.  (N.T. at 27, 29).

[5] In his Schedule I filed in Bky. No. 04-33333, the last bankruptcy case filed by Mr.
Grant while represented by counsel, he listed his occupation as "driver" and his monthly gross
income as $3,033 per month. The same Schedule I states that Mr. Grant is married and that his

real property income.  On Schedule J, Mr. Rauso made similar estimations. He reported that Mr.

Grant had approximately $250 in monthly expenditures for telephone, food and recreation.  He

listed the amount "$0" for monthly expenditure line items such as rent/mortgage, transportation,

automobile instalment payments.  For other items, such as clothing, medical and

alimony/support, he listed the monthly amounts as  "**?**"[6]

Finally, on the "Declaration Concerning Debtor's Schedules," Mr. Rauso signed his

initials on the line for the debtor's signature, followed by "POA Oral Grant."  The signature line

for a "Non-Attorney Bankruptcy Petition Preparer" was left blank.


## IV.

### A.

Section 110 proscribes certain conduct by non-attorneys who assist debtors in preparing

bankruptcy documents.  Section 110 only applies to "bankruptcy petition preparers."  11 U.S.C.

§110.  A "bankruptcy petition preparer" is defined as "a person, other than an attorney for the

debtor or an employee of such attorney under the direct supervision of such attorney, who

prepares for compensation a document for filing."  Id. at §110(a)(1). A "document for filing" is

defined as "a petition or any other document prepared for filing by a debtor in a United States

bankruptcy court or a United States district court in connection with a case under this title."  Id.

---

spouse is employed earning a gross income of $3,100 per month.

[6] Mr. Rauso also made a notation that Mr. Grant's utilities were unknown as he thought
Mr. Grant was living with a friend at the time.

§110(a)(2).

Mr. Rauso concedes that he prepared a "document for filing" – the bankruptcy petition and/or schedules, in Mr. Grant's fourth bankruptcy case. (N.T. at 71).  There also is no question that Mr. Rauso is not an attorney.  Therefore, the parties focused their arguments on whether Mr. Rauso received "compensation" for preparing a "document for filing."

The UST's position is that Mr. Rauso's rent-free living arrangement at the Darby Property (the same property Mr. Rauso formerly owned, but sold to Mr. Grant for one dollar) constitutes compensation. The UST accepts the proposition that Mr. Rauso's authority to handle Mr. Grant's affairs through the Power of Attorney included the ability to file a bankruptcy petition for Mr. Grant.  The UST then reasons that regardless whether Mr. Rauso received compensation for non-bankruptcy services provided pursuant to the Power of Attorney,  there is a direct connection between the compensation and the bankruptcy filing because Mr. Rauso's power to file the bankruptcy case was derived from the Power of Attorney. The UST contends that the nexus between the compensation and the bankruptcy filing is sufficient to bring Mr. Rauso within the orbit of 11 U.S.C. §110.

Mr. Rauso asserts that his right to live rent-free in the Darby Property owned by Mr. Grant has nothing to do with the bankruptcy petition he filed on Mr. Grant's behalf.  To the extent that the benefit of living in the property without paying rent may be "compensation," Mr. Rauso characterizes it as compensation for fulfilling his duties as attorney-in-fact.[7]  Filing the

---

[7]  At the hearing, Mr. Rauso testified that "under the provisions of the law, I am entitled to get some type of compensation for handling [Mr. Grant's] affairs, as power of attorney . . . ." (N.T. at 87-88).

8

bankruptcy case was simply part of his responsibilities as Mr. Grant's attorney-in-fact.  Mr.

Rauso further argues that "being entitled" to compensation and "actually having been

compensated for said matters are two completely different things" and that there is no evidence

in the record of a "quid pro quo" supporting a finding that he was compensated directly for filing

Mr. Grant's bankruptcy petition.  See Rauso Memorandum of Law at 6, 8.

## B.

I will first address Mr. Rauso's authority to file a bankruptcy petition with the Power of

Attorney signed by Mr. Grant because, as explained below, it is determinative on the issues

before me under 11 U.S.C. §110.

Federal Rule of Bankruptcy Procedure 9010 governs the authority of persons or entities to

act in bankruptcy proceedings and specifically addresses the use of powers of attorney:

> (a) Authority to act personally or by attorney. A debtor, creditor,
> equity security holder, indenture trustee, committee or other party
> may (1) appear in a case under the Code and act either in the
> entity's own behalf or by an attorney authorized to practice in the
> court, and (2) **perform any act not constituting the practice of
> law, by an authorized agent, attorney in fact, or proxy.**
>
> (b) Notice of appearance. An attorney appearing for a party in a
> case under the Code shall file a notice of appearance with the
> attorney's name, office address and telephone number, unless the
> attorney's appearance is otherwise noted in the record.
>
> **(c) Power of attorney. The authority of any agent, attorney in
> fact, or proxy to represent a creditor for any purpose other
> than the execution and filing of a proof of claim or the**

> **acceptance or rejection of a plan shall be evidenced by a power
> of attorney conforming substantially to the appropriate
> Official Form. The execution of any such power of attorney
> shall be acknowledged before one of the officers enumerated in
> 28 U.S.C. § 459, § 953, Rule 9012, or a person authorized to
> administer oaths under the laws of the state where the oath is
> administered.**

Fed. Bankr. R. P. 9010 (emphasis added).

Bankruptcy Rule 9010 does not expressly authorize the use of a power of attorney to file
a bankruptcy petition.  Rather, subsection (a)(2) provides authority for an attorney-in-fact to act
on behalf of a debtor, but limits it to performance of "any act not constituting the practice of
law."  Further, subsection (c), which also addresses powers of attorney, pertains only to the
authority of an attorney in-fact to represent a creditor, subject to certain limitations.  Subsection
(c) does not address the authority of an attorney-in-fact to represent a debtor.

Some courts have permitted a third party with a proper power of attorney to sign and file
a bankruptcy petition on behalf of a debtor.  See e.g., In re James, 2005 Bankr. Lexis 2047
(Bankr. N.D. Tex. 2005); In re Hurt, 234 B.R. 1 (Bankr. D.N.H. 1999); In re Sullivan, 30 B.R.
781, 782 (Bankr. E.D. Pa.1983); cf. In re Curtis, 262 B.R. 619, 623-24 (Bankr. D. Vt. 2001); In
re Brown, 163 B.R. 596, 598 (Bankr. N.D. Fla.1993).  The courts are split as to the "requisite
indicia or authority" necessary to authorize the commencement of a bankruptcy case through an
attorney-in-fact.  In re Curtis, 262 B.R. at 622 .  As explained in the thoroughly researched
opinion in Curtis:

> Some courts recognize the effectiveness of a power of attorney
> only if ratified by the debtor. See In re Ballard, 1987 WL 191320
> (Bankr. N.D. Cal.1987) (general power of attorney authorizes filing
> of bankruptcy provided debtor, stationed abroad in armed services,

10

specifically ratifies the filing in writing); In re Sullivan, 30 B.R. 781 (Bankr. E.D. Pa.1983) (filing of bankruptcy pursuant to a general power of attorney allowed where it is subsequently ratified in writing by the debtor with an express grant of authority). A number of courts scrutinize the empowering document for express language specifically authorizing the filing of bankruptcy. See In re Brown, 163 B.R. 596 (Bankr. N.D. Fla.1993) (specific language expressly authorizing filing of bankruptcy required in the power of attorney along with exceptional circumstances); In re Raymond, 12 B.R. 906 (Bankr. E.D. Va.1981) (general power of attorney does not authorize wife to file bankruptcy for husband, stationed abroad in armed services, which is deemed a personal privilege); In re Morgan, 182 B.R. 4 (Bankr.S.D.N.Y.1995) (citing In re Raymond and voiding petition ab initio where the debtor rejected the petition filed without her knowledge by another pursuant to an unacknowledged power of attorney that did not specifically authorize filing bankruptcy); In re King, 234 B.R. 515 (Bankr.D.N.M.1999) (while dealing with ability of conservator to file for another, notes that the debtor never affirmatively gave the power to file on her behalf). Moreover, some courts are concerned that a court-appointed guardian or next of friend be involved in a bankruptcy filing pursuant to a power of attorney. See In re Smith, 115 B.R. 84 (Bankr. E.D. Va.1990) (citing In re Raymond, rejects bankruptcy petition filed pursuant to power of attorney and requires a court-appointed guardian or next friend); see generally In re Murray, 199 B.R. 165 (Bankr. M.D. Tenn.1996).

Id. at 622 -623.

In Hurt, for example, the Bankruptcy Court for the District of New Hampshire authorized Sandra O'Neil to commence a bankruptcy case as attorney-in-fact on behalf of Pauline S. Hurt. Ms. O'Neil had a general power of attorney that granted her broad authority over Ms. Hurt's financial affairs and authority to "commence and prosecute, defend and settle . . . all actions or proceedings in which [Ms. Hurt] have or may have any interest or concern." Hurt, 234 B.R. at 3. The court found that such broad authority over legal affairs included the power to initiate a

bankruptcy proceeding. Id.[8]

By comparison, the court in In re Eicholz took a more restrictive approach and found a general power of attorney insufficient for filing a bankruptcy.  See In re Eicholz, 310 B.R. 203 (Bankr. W.D. Wash 2004).  Eicholz involved an attempt by Mrs. Marti Eicholz to file a joint Chapter 11 bankruptcy petition on behalf of herself and her husband, Robert Eicholz.   Mr. Eicholz apparently objected to the filing by advising the court in a letter that he had not authorized Mr. Eicholz to file for bankruptcy on his behalf.  The power of attorney at issue granted the authority to manage Mr. Eicholz's real and personal property and to "participate in any legal action," which included the "attachment execution, eviction, foreclosure indemnity and other proceedings for equitable or injunctive relief," and "legal proceedings in connection with the authority granted in this instrument."  Id. at 205-206.  The power of attorney also granted

---

[8] The Hurt court also explained that four (4) requirements must be present for a petition to be filed properly by an attorney-in-fact:

> (1)  All documents, including the petition, schedules and statements, must be properly executed by the attorney-in-fact "in a manner which reflects the representative capacity of the attorney in fact;"

> (2)  A copy of the power of attorney must be filed with the petition;

> (3)  The attorney must appear at the first meeting of the creditors and the trustee must require the attorney-in-fact to state on the record the reasons necessitating the filing; and

> (4)  Counsel or the attorney-in-fact must file with the petition the current mailing address for the debtor.

Hurt, 234 B.R. at 3.

authority to "discharge any and all claims of liability or indebtedness against the Principal." <u>Id.</u>
at 207.  The court held that such generic language was insufficient for Mrs. Eicholz to initiate a
joint bankruptcy case.

Here, Mr. Rauso incorrectly cites to Bankruptcy Rule 9010(c) for his authority to file Mr.
Grant's bankruptcy petition.  Nonetheless, based on my construction of the operative instrument
Mr. Grant signed,[9] I agree that Mr. Rauso had authority to file a bankruptcy petition on Mr.
Grant's behalf.

The Power of Attorney was drafted under the relevant Pennsylvania statutory scheme.
<u>See</u> 20 Pa. C.S. §§5601-5611.  Therefore, I must look to Pennsylvania law to construe the Power
of Attorney at issue.

The first, general provision of the Pennsylvania statute, 20 Pa. C.S. §5601, provides an
acknowledgment that any of the powers referred to in §5602(a) may be lawfully delegated in
writing, "[i]n addition to all other powers that may be delegated to an attorney-in-fact."  20 Pa.
C.S. §5601; <u>see also</u> <u>In re Weidner</u>, 895 A.2d 11, 17 (Pa Super. Ct. 2006).  Next, §5602
enumerates the specific powers that may be granted by a principal, which includes the ability
"[t]o pursue claims and litigation."  20 Pa. C.S. §5602(a)(20). Finally, §5603 defines the power
"to pursue claims and litigation" as follows:

> (s) Power to pursue claims and litigation. --A power to "pursue
> claims and litigation" shall mean that the agent may:
>
> (1) Institute, prosecute, defend, abandon, arbitrate, compromise,
> settle or otherwise dispose of, and appear for the principal in, any

---

[9]  Despite any doubts that there may be concerning Mr. Rauso's credibility, <u>see</u> n.1.,
<u>supra</u>, I do believe and find that he met with Mr. Grant and convinced him to sign the Power of
Attorney.

> legal proceedings before any tribunal regarding any claim relating
> to the principal or to any property interest of the principal.
>
> (2) Collect and receipt for any claim or settlement proceeds; waive
> or release rights of the principal; employ and discharge attorneys
> and others on such terms (including contingent fee arrangements)
> as the agent deems appropriate.
>
> (3) In general, exercise all powers with respect to claims and
> litigation that the principal could if present.

20 Pa. C.S. §5603. Neither the statute nor Pennsylvania case law addresses whether a

bankruptcy filing falls within the definition of "[t]o pursue claims and litigation."

An examination of several provisions of the Power of Attorney leads me to conclude that

Mr. Rauso had authority to file a bankruptcy petition on Mr. Grant's behalf.  Especially

compelling is the language in paragraph 8 because it provides Mr. Rauso with broad authority to

institute legal and equitable proceedings in connection with "the premises." Paragraph 8  states:

> (8) To **institute**, prosecute, defend, compromise, arbitrate and
> dispose of **legal, equitable** or administrative hearings, actions,
> suits, attachments, arrests, distresses or the proceedings, **or
> otherwise engage in litigation in connection with the premises**;

See Power of Attorney at ¶ 8 (emphasis added)

Although paragraph 8 does not explicitly authorize the filing of a bankruptcy case, the

Pennsylvania Supreme Court has held that under Pennsylvania's statute governing powers of

attorney, general language may be used in the instrument to encompass a power specifically

identified in the statute, despite the fact the language failed to explicitly identify the power.  In In

re Estate of Reifsneider, 610 A.3d 958, 961 (Pa. 1992), the court explained:

> [G]eneral language can "show a similar intent on the part of the
> principal" to empower the attorney-in-fact to do one or more of the
> listed things if the general language, according to its common
> usage, would be understood as encompassing such power or

14

> powers. Often, the very purpose of using broad language is to
> avoid the limiting effects of specific language, to address all
> aspects of a class of activity without the need to anticipate and
> identify each individually. And when an attorney-in-fact performs
> one of the activities listed in § 5602(a) under authority of general
> language, section 5603 provides the definitions and limitations that
> circumscribe his activity.

Id. at 962.[10]

What constitutes "the premises" for purposes of paragraph 8 is unclear, at first.   The

phrase is used in paragraphs 5, 8 and 14, but not defined until paragraph 14 as the property

located on 73rd Street in Philadelphia, Mr. Grant's former street address.  Paragraph 14 states:

> (14) To prepare, sign and file any and all documents or papers
> relating to the litigation of the matter Chase Manhattan Mortgage
> Corp. v. Grant, (Phila. Co. C.P. No. 031001026), hereinafter
> referred to as the "foreclosure action,"hereinafter referred to as the
> "premises," **as well as pertaining to any legal action my agent
> deems, in his sole discretion, that may be required to be filed
> on my behalf in any court of law in order to stay the execution
> of the judgment** that has been entered in said foreclosure action
> pertaining to the sheriff's sale of the premises.

See Power of Attorney at ¶14 (emphasis added).[11]

The "hereinafter" reference in connection with "the premises" in paragraph 14 is pointless

because paragraph 14 is the last provision of the instrument.  Actually, the first reference to Mr.

---

[10] Reifsneider was statutorily overruled, in part, as to the power to make a gift by the
enactment of 20 Pa. C.S. §5601.2.  See 20 Pa. C.S. §5601.2, Official Comment –1999 ("It is the
intent of subsections (a), (b) and (c) to overrule [Reifsneider], to the extent that Reifsneider
would permit an agent to make a gift under a power of attorney which does not specifically
provide for that power. . . . The principal may no longer authorize the agent to make an unlimited
gift by incorporation by reference. See repeal of section 5602(a)(1)(i) (form of power of
attorney).")

[11]  The "hereinafter" reference to use of the phrase "the premises" is inoperative because
paragraph 14 is the last provision of the instrument.

Rauso's power pertaining to Mr. Grant's real estate property is found in paragraph 1.  Paragraph 1 states that Mr. Rauso's has the power to, <u>inter alia</u>,  "buy, receive, lease, accept or otherwise acquire . . .  "any property whatsoever, real or personal **<u>including but not limited to</u>**" two properties –  the Folcroft Property and Mr. Grant's former street address.  <u>See</u>  Power of Attorney at ¶1 (emphasis added).  This is broad, inclusive language.  Therefore, reading paragraph 1 together with paragraph 8 leads me to conclude that  Mr. Rauso had authority to initiate legal proceedings in connection with any of Mr. Grant's properties.

Furthermore, I find that paragraph 14 contemplates, by implication, a bankruptcy filing.  The provision authorizes Mr. Rauso to initiate "any legal action . . . that may be required to be filed . . . in **<u>any court of law</u>** in order to **<u>stay the execution of the judgment</u>** that has been entered in said foreclosure action. . . ."  <u>See</u> Power of Attorney at ¶ 14. <u>See generally</u> <u>McCartney v. Integra Nat. Bank North</u>, 106 F.3d 506, 509 (3d Cir. 1997) (citation omitted) ("The automatic stay [in a bankruptcy case] serves several purposes. The stay gives a debtor a breathing spell from creditors by stopping all collection efforts and all foreclosure actions. In this respect, the stay permits the debtor to attempt a repayment or reorganization plan; or it simply relieves the debtor of the financial pressures that drove him into bankruptcy.").  Although paragraph 14 only pertains to the property on 73rd Street, I read that provision in conjunction with paragraphs 1 and 8 to express an intention to delegate authority to Mr. Rauso to initiate any legal proceedings, including the filing of a bankruptcy petition, on behalf of Mr. Grant and/or his properties.  I am also mindful that the UST seems to agree that Mr. Rauso had authority under the Power of Attorney to file a bankruptcy case on Mr. Grant's behalf.

16

## C.

I will now address the applicability of 11 U.S.C. §110.

My review of the statute leads me to conclude that §110 is not intended to apply to an individual, acting in the capacity of an attorney-in-fact, who signs and files documents in a bankruptcy case on behalf of a person who has lawfully delegated the requisite authority to the attorney-in-fact.  In other words, an individual who prepares a bankruptcy document for filing cannot fill both shoes; he must be one or the other – an attorney-in-fact or a bankruptcy petition preparer. I reach this conclusion, after a review of the statutory requirements and penalties for bankruptcy petition preparers.  My analysis of §110 leads me to conclude that it would be impossible for an individual to file a bankruptcy for another as attorney-in-fact and comply with §110 as a "bankruptcy petition preparer" and that application of §110 to an attorney-in-fact would lead to absurd results that Congress could not have intended.  See In re Resorts Int'l, Inc., 181 F.3d 505, 515 (3d Cir.1999) ("We begin every statutory interpretation by looking to the plain language of the statute. When the language is clear, no further inquiry is necessary unless applying the plain language leads to an absurd result.") (citations omitted).

For instance, an attorney-in-fact cannot avoid an inherent conflict with §110(e).  Section 110(e)(1) prohibits a bankruptcy petition preparer from executing any document on the debtor's behalf.  An attorney-in-fact cannot effectuate a bankruptcy filing without signing the petition on the debtor's behalf as power of attorney. Therefore, it is impossible for an attorney-in-fact to comply with subsection (e)(1).

For similar reasons, 11 U.S.C. §110(b)(2)(A) cannot rationally be applied to a lawful attorney-in-fact.  That section imposes certain disclosure requirements before a petition preparer

"prepares any document for filing or accepting any fees from a debtor."  If an individual has effectively stepped into a potential debtor's shoes in the capacity of an attorney-in-fact, it is counterintuitive for an attorney-in-fact to be compelled to make a disclosure to the debtor prior to filing the bankruptcy case.  And, of course, it would be absurd for the attorney-in-fact in his capacity as a petition preparer to be obliged to make a disclosure to himself in his capacity as the attorney-in-fact for the debtor

Another problematic provision is 11 U.S.C. §110(e)(2).  Section 110(e)(2) forbids a bankruptcy petition preparer from offering any legal advice, including the legal advice described in §110(e)(2)(B), which includes advice as to whether the debtor should file a bankruptcy petition.  11 U.S.C. §110(e)(2)(B)(I).   If the decision to actually file a bankruptcy petition is within the powers granted an attorney-in-fact, it would be paradoxical for the attorney-in-fact to be prohibited from advising himself whether to file a bankruptcy petition.

Finally, treble damages may be assessed against a "bankruptcy petition preparer" who fails to inform the debtor of the filing. See 11 U.S.C. §110(l)(2)(c).  I can conceive of scenarios where an individual, as attorney-in-fact, needs to invoke the power to file a bankruptcy where it may be impractical, useless or even against the best interests of the debtor to require that the debtor be informed of the filing.  For instance, a potential debtor may be unreachable or out of the country and time is of the essence to stop a sheriff's sale.  Or, the potential debtor might be incompetent and therefore, unable to comprehend the meaning of bankruptcy, let alone the specific purpose for the filing. Indeed, these are the prototypical situations in which it may be most appropriate for a person to appoint another individual to act as his attorney-in-fact.   If the attorney-in-fact under any of those scenarios were required to inform the debtor of the filing,

18

compliance with the requirement might hinder or delay a filing that perhaps might be in the

potential debtor's best interest.  As a consequence for the failure to timely file, the attorney-in-

fact might be faced with liability pursuant to 20 Pa. C.S. §5608.[12]  Accordingly, requiring

compliance with §110(l)(2)(c) also seems inappropriate for an attorney-in-fact.[13]

Based on this analysis, I conclude that 11 U.S.C. §110 was not intended to apply to an

---

[12] 20 Pa. Cons. Stat. Ann. §5608 entitled "Liability" provides in relevant part:

> Any person who is given instructions by an agent in accordance
> with the terms of a power of attorney shall comply with the
> instructions. Any person who without reasonable cause fails to
> comply with those instructions shall be subject to civil liability for
> any damages resulting from noncompliance.

[13] What I believe the more prudent approach to be is for an attorney-in-fact, who finds
himself in a situation where filing a bankruptcy petition for the principal is essential, to seek legal
advice and file the bankruptcy petition with legal counsel.  This seems appropriate due to the
heightened statutory responsibility entrusted in the agent as an attorney-in-fact.  20 Pa. C.S.
§5601(e) provides that the agent has a fiduciary duty to its principal:

> **(e) Fiduciary relationship.--**An agent acting under a power of
> attorney has a fiduciary relationship with the principal. In the
> absence of a specific provision to the contrary in the power of
> attorney, the fiduciary relationship includes the duty to:
>
> (1) Exercise the powers for the benefit of the principal.
>
> (2) Keep separate the assets of the principal from those of an agent.
>
> (3) Exercise reasonable caution and prudence.
>
> (4) Keep a full and accurate record of all actions, receipts and
> disbursements on behalf of the principal.

As the principal's fiduciary, the agent should ensure a bankruptcy filing is in the principal's best
interest. Also, it is difficult to comprehend how an individual acting as an attorney-in-fact can
initiate legal proceedings in a representative capacity without practicing law.  In the bankruptcy
context, this tension implicates Fed. R. Bankr. P. 9010(a) which expressly limits the lawful
actions of an attorney-in-fact in a bankruptcy case to matters "not constituting the practice of
law."

19

individual acting in a representative capacity, acting as a lawful attorney-in-fact,  who files a

bankruptcy petition on behalf of another person.  In light of this conclusion, I find that Mr. Rauso

was not a "bankruptcy petition preparer" and did not violate §110 when he filed Mr. Grant's

fourth bankruptcy case with the Power of Attorney.[14]   The show cause order will be discharged.


### V.

At the conclusion of the hearing I requested that the parties address my power under 11

U.S.C. §105(a) to sanction Mr. Rauso's conduct.  Section 105(a) of the Bankruptcy Code

provides:

---

[14] Assuming, <u>arguendo</u>, the services Mr. Rauso provided were not in his capacity as
attorney-in-fact for Mr. Grant, the UST's argument that Mr Rauso was a bankruptcy petition
preparer and his receipt of free rent as compensation for a bundle of services, including the filing
of a bankruptcy petition, may have some merit.  Some courts have rejected attempts to evade the
consequences set forth in the statute by persons who claimed they were not compensated for
preparing documents, but merely were collecting money for other services.  See <u>e.g.</u>, <u>In re
Garrison</u>, 2000 WL 276975, at *3 (8th Cir. 2000) (unpublished) ("We believe the bankruptcy
court reasonably could interpret Womack's testimony to indicate that debtor gave money to the
ministry as a result of Womack's assistance, and could deem Womack to have received
compensation for his services such that he was a bankruptcy petition preparer within the meaning
of §110(a)(1)."); <u>In re Crowe</u>, 243 B.R. 43 (B.A.P. 9th Cir. 2000)(nonattorney who sold self-help
bankruptcy book and offered book purchasers free assistance with bankruptcy document
preparation was "compensated" as a bankruptcy petition preparer); <u>In re Landry</u>, 250 B.R. 441
(Bankr. M.D. Fla. 2000) ($275 fee that was designated as a "membership fee for "document
preparation club" was subterfuge for limitation on compensation for preparing bankruptcy filing
documentation); <u>In re Paskel</u>, 201 B.R. 511, 515-16 (Bankr. E.D. Ark. 1996) (noting that even if
preparer took money for preparing petition only to benefit charity, section 110 would apply); <u>cf.</u>
<u>In re Herrera</u>, 194 B.R. 178, 190-91 (Bankr. N.D. Ill. 1996) (holding section 110 inapplicable
without evidence that husband or husband's corporation was paid for signing wife's name on
bankruptcy papers).  However, in deciding that Mr. Rauso exercised a lawful power of attorney
and, for that reason, was not a petition preparer under 11 U.S.C. §110, it is unnecessary for me to
reach the issue of whether Mr. Rauso was compensated within the meaning of §110.

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.  No
> provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking an action or making any determination necessary or
> appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

I raised the issue of the imposition of sanctions pursuant to 11 U.S.C. §105(a) because the

evidence presented at the hearing scheduled under §110 suggested the possibility that Mr. Rauso

has been engaging in an abuse of the bankruptcy system and, perhaps even a violation of  a

criminal statute.  See 18 U.S.C.A §157.[15]  From the evidence presented, it appears that Mr. Rauso

took encumbered properties under his own ownership or control, transferred them to Mr. Grant[16]

for virtually no consideration, obtained a Power of Attorney from the Mr. Grant as transferee and

then used his authority under the Power of Attorney to file a bankruptcy, perhaps in bad faith,

---

[15] 18 U.S.C.A §157 provides in whole part:

A person who, having devised or intending to devise a scheme or artifice to defraud and
for the purpose of executing or concealing such a scheme or artifice or attempting to do so--

> (1) files a petition under title 11, including a fraudulent involuntary bankruptcy petition
> under section 303 of such title;
>
> (2) files a document in a proceeding under title 11; or
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation
> to a proceeding under title 11, at any time before or after the filing of the petition, or in
> relation to a proceeding falsely asserted to be pending under such title, shall be fined
> under this title, imprisoned not more than 5 years, or both.

[16]  Functionally, as a result of signing the Power of Attorney, Mr. Grant may have served
as a "straw man" in this scheme.  There is no basis to determine whether he did so unknowingly
or unwittingly.

perhaps as part of a fraudulent scheme. This all occurred against the backdrop of a bar order prohibiting Mr. Rauso from filing any bankruptcy cases in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania without permission from the court.

Notwithstanding the disturbing picture painted in the record, for the reasons set forth below, I make no findings at this time and I will defer any decision whether it would be appropriate to exercise my authority under §105(a) to sanction Mr. Rauso until such time, if any, that the issue of sanctions comes before me.

The Supreme Court in Chambers v. NASCO, Inc., 501 U.S. 32 (1991) addressed the nature and scope of the district court's inherent power to control the conduct of those who appear before them. Some circuits view §105(a) as a codification of a bankruptcy court's inherent power. See, e.g., In re Rainbow Magazine, Inc., 77 F.3d 378 (9th Cir. 1996); In re Courtesy Inns, Ltd., 40 F.3d 1084, 1089 (10th Cir. 1994); In re Glasco, 321 B.R. 695, *701 (W.D. N.C. 2005).

The Third Circuit's decision in Fellheimer v. Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215 (3d Cir. 1995), applied the inherent powers addressed by Chambers in the context of a bankruptcy case. In Fellheimer, the appellate court affirmed a district court order reversing the imposition of sanctions under Fed. R. Civ. P. 11 by the bankruptcy court against a law firm. Significantly, the Third Circuit emphasized that prior to sanctioning, the court must provide "particularized notice" and "some opportunity to respond to the charges" to comport with due process requirements. Id. at 1225. Citing to its decision in Jones v. Pittsburgh National Corp., 899 F.2d 1350, 1357 (3d Cir.1990), the Fellheimer court said, "[g]enerally speaking, particularized notice will usually require notice of the precise sanctioning tool that the court intends to employ." Fellheimer, 57 F.3d at 1225. (emphasis in original). The

22

court allowed the sanctions under §105(a), notwithstanding, because the party was on notice that

its bad faith was in issue and also had eleven weeks to prepare for the sanctions motion.  Id. at

1226.

 Fellheimer must be contrasted with the situation before me.  While the parties have

addressed the issue of my power under §105(a) in the legal memoranda that they have submitted,

I do not believe that this proceeding afforded Mr. Rauso the type of due process protections

contemplated by the Third Circuit.  Prior to the hearing, Mr. Rauso did not receive particularized

notice of the basis for the possible imposition of sanctions under §105(a).  The notice provided

was limited to potential sanctions under §110.  The type of conduct which may give rise to

sanctions under §110 differs significantly from the conduct which came to light at the hearing

and which may subject Mr. Rauso to sanctions under §105(a).   Therefore, I have concerns that

Mr. Rauso's ability to prepare in advance a focused defense against the imposition of sanctions

under §105(a) may have been hampered by the lack of the kind of particularized notice required

by teachings of Fellheimer.[17]  Because I have these concerns, if I err, I choose to err in favor of

protecting Mr. Rauso's due process rights.

 If Mr. Rauso should be sanctioned, the matter should be pursued through a separate

motion or adversary complaint initiated by the UST.[18]   Accordingly, I will keep this

miscellaneous matter open for another forty-five (45) days in order for the UST to determine, in

---

 [17]  My reference in court to my inherent powers occurred only after the record was closed
at the end of at the May 25, 2006 hearing and therefore, does not cure the notice problem.

 [18]  Thus, my holding under 11 U.S.C. §110 and my decision that it would be procedurally
inappropriate to sanction Mr. Rauso at this time pursuant to 11 U.S.C. §105(a) may not
necessarily mark the end of  Mr. Rauso's legal difficulties.

her discretion, whether to pursue the issues discussed in this Memorandum Opinion.[19]

       An Order consistent with this Memorandum will be entered.


Date:   __January 25, 2007__          _____

                                         **ERIC L. FRANK**
                                         **U.S. BANKRUPTCY JUDGE**

---

[19]  I will keep this miscellaneous matter open in the event that the UST deems it appropriate to proceed by motion, but see Fed. R. Bankr. P. 7001(1), (7), so that her motion may be made under this caption and miscellaneous docket number.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | GENNARO RAUSO | : | MISCELLANEOUS |
| | | : | |
| | | : | No. 06-03006ELF |
| | | : | |

# O R D E R

**AND NOW,** for the reasons set forth in the accompanying Memorandum Opinion,

It is hereby **ORDERED** that

1.  The order to show cause is **DISCHARGED**.

2.  This matter will remain open under this Miscellaneous Docket Number to permit the United States Trustee to determine, in her discretion, whether to initiate further proceedings to address the issues raised in the accompanying Memorandum.

3.  If the United States Trustee has not filed a motion under this Miscellaneous Docket Number by **March 12, 2007**, the Clerk of Court shall thereafter close this miscellaneous proceeding matter forthwith.

Date:    January 25, 2007

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**